UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| ANNAMARIE ALT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-794 |
| | ) | |
| v. | ) | Honorable Robert J. Jonker |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB). On April 21, 2006, plaintiff filed her application for DIB benefits. She alleged a January 31, 2005, onset of disability. (A.R. 89-91). Plaintiff pursued the matter through a final administrative decision dated December 30, 2008 (A.R. 10-21), in which her claim for DIB benefits was denied. In 2011, plaintiff filed a complaint in this court seeking judicial review of the decision denying her claim for DIB benefits. The lawsuit ended in a judgment reversing the Commissioner's decision and remanding the matter under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. *See Alt v. Commissioner*, 1:11-cv-29 (W.D. Mich. Aug. 23, 2011). The court did not retain jurisdiction. *See Shalala v. Schaefer*, 509 U.S. 292, 299-300 (1993). On May 7, 2012, plaintiff received a hearing before an ALJ, at which she was represented by counsel. (A.R. 478-505). On June 29, 2012, the ALJ issued his decision finding that

plaintiff was not disabled during the period from January 31, 2005, through December 30, 2008.[1]
(A.R. 461-72).  On May 23, 2013, the Appeals Council denied review and the ALJ's decision
became the Commissioner's final decision.

On July 23, 2013, plaintiff filed a complaint seeking judicial review of the
Commissioner's decision.  She argues that the Commissioner's decision should be overturned on
the following grounds:

1.  The ALJ failed to properly evaluate and weigh the medical opinion evidence of
record, as required under the treating physician rule; and

2.  New and material evidence reveals a severe inconsistency in the final decision of the
Commissioner.

(Plf. Brief at 2,  docket # 24).  I recommend that the Commissioner's decision be affirmed.


## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to
determine whether the Commissioner's findings are supported by substantial evidence and whether
the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124,
125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is
defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a
conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v.
Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).

---

[1]The briefs filed by the parties erroneously state that this case involves a claim for
supplemental security income (SSI) benefits in addition to the claim for DIB benefits.  (Plf. Brief
at 1; Def. Brief at 1).   The only administrative decision subject to judicial review is the
Commissioner's decision denying plaintiff's claim for DIB benefits for the period from her alleged
onset of disability of January 31, 2005, through December 30, 2008.  (*see* A.R. 10, 24, 89, 461-72).

The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ."  42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . .  This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference."  *Buxton*, 246 F.3d at 772-73.  "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently."  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion.").  "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from January 31, 2005, through December 30, 2008, the "time period under

consideration."[2]  (A.R. 464).  Plaintiff had not engaged in substantial gainful activity on or after

January 31, 2005.  (A.R. 464).  Plaintiff had the following severe impairments:  coronary artery

disease, status post angioplasty and stent placement in 2000, tennis elbow status post release in

2007, exostis of the fourth and fifth digits on the right foot, status post exostectomy in 2005 to

remove a painful corn between those toes, affective disorder/bipolar disorder NOS, alcohol

dependence, and history of cocaine abuse.[3]  (A.R. 464).  Plaintiff did not have an impairment or

combination of impairments which met or equaled the requirements of the listing of impairments.

(A.R. 468).  The ALJ found that plaintiff retained the residual functional capacity (RFC) for a

limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through
> December 30, 2008, the claimant had the residual functional capacity to perform light work
> as defined in 20 CFR 404.1567(b), except she is limited to simple, repetitive and routine
> tasks; she cannot be in contact with the general public; she is unable to perform fast paced
> jobs; she is unable to perform jobs with quota requirements; she is unable to climb ladders,
> ropes, or scaffolds; she is occasionally able to climb ramps or stairs as well as c[r]ouch and
> crawl; she is limited to frequent balancing, stoop[ing] and kneeling; and, she must avoid
> concentrated exposure to fumes, odors, gasses, and poor ventilation.

---

[2]"The claimant applied for disabled widow's benefits on January 6, 2009.  Another administrative Law Judge issued a favorable decision on April 13, 2011, finding that the claimant became disabled on December 31, 2008.  The Appeals Council, in the remand order, affirmed the finding of this hearing decision that the claimant was disabled beginning December 31, 2008." (A.R. 461).

[3]Plaintiff has a significant substance abuse history.  Since 1996, the Social Security Act, as amended, has precluded awards of DIB benefits based upon alcoholism and drug addiction.  *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004).  The claimant bears the burden of demonstrating that substance abuse was not a factor contributing to her disability.  *See Cage v. Commissioner*, 692 F.3d 118, 122-25 (2d Cir. 2012); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004).  Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability.  *See Gayheart v. Commissioner*, 710 F.3d at 380.

(A.R. 469).  The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible.  (A.R. 469-71).  The ALJ found that plaintiff was not disabled at step 4 of the sequential analysis because she was capable of performing her past relevant work as a hand packager.[4]

## 1.

Plaintiff argues that this matter should be remanded to the Commissioner under sentence six of 42 U.S.C. § 405(g) because a different ALJ found that one day after the period at issue in this lawsuit ended, plaintiff was disabled.  (Plf. Brief at 8-11 and Exhibit A; Reply Brief at 5).  It is clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review.  This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ.  The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ.  *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348,

---

[4]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act."  *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity.  Next, the claimant must demonstrate that she has a 'severe impairment.'  A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.'  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past.  Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.  The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work."  *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ."). The court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

Plaintiff requests a remand to the Commissioner under sentence six of 42 U.S.C. § 405(g). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence she now presents in support of a remand is "new" and "material," and that there

is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. I recommend that plaintiff's request for a sentence six remand be denied because she has not carried her statutory burden. *See Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014).

In *Allen v. Commissioner*, 561 F.3d 646 (6th Cir. 2009), the Sixth Circuit held that a subsequent administrative decision awarding benefits does not satisfy the plaintiff's burden under sentence six: "[A] subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)." 561 F.3d at 653. "Under sentence six, the mere existence of a subsequent decision in [plaintiff's] favor, standing alone, cannot be evidence that can change the outcome of his prior proceeding. A subsequent favorable decision may be *supported* by evidence that is new and material under § 405(g), but the decision is not itself new and material evidence." 561 F.3d at 653. The Sixth Circuit explained that consideration of the result achieved on a subsequent application for benefits as "new evidence" under sentence six would be inconsistent with the statutory purpose of a sentence-six remand and would be contrary to controlling Supreme Court precedent:

> If a subsequent favorable decision -- separated from any new substantive evidence supporting the decision -- could itself be "new evidence" under sentence six, the only way that it might change the outcome of the initial proceeding is by the power of its alternative analysis of the same evidence. But remand under sentence six is not meant to address the "correctness of the administrative determination" made on the evidence already before the initial ALJ. [*Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991)]. In addition, it is overly broad to read the words 'new evidence' in sentence six to include a subsequent decision based on the same evidence. In *Melkonyan*, the Court noted that the legislative history of § 405(g) shows that "Congress made it unmistakably clear that it intended to limit the power of district courts to order remands for 'new evidence' in Social Security cases.'" *Id.* at 100.

561 F.3d at 653.   The mere fact of a subsequent favorable decision cannot be deemed "new evidence" under these authorities.   The only legitimate effect of the subsequent proceedings would arise from evidence considered in those proceedings that bears on plaintiff's condition on or before December 30, 2008.   *See Nichols v. Commissioner*, No. 1:12-cv-995, 2014 WL 4259445, at * 8 (W.D. Mich. Aug. 29, 2014).   Plaintiff did not submit any new medical evidence in support of her request for a sentence-six remand.   The subsequent decision awarding benefits does not provide a basis for remanding this case to the Commissioner under sentence six of 42 U.S.C. § 405(g).

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted.   I recommend that plaintiff's request for a sentence six remand be denied. Plaintiff's arguments must be evaluated on the record presented to the ALJ.

## 2.

Plaintiff argues that the ALJ committed reversible error in his application of the treating physician rule to the opinions of Psychiatrist Nan Alt.   (Plf. Brief at 4-8; Reply Brief at 1-4). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.   20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).   A treating physician's opinion that a patient is disabled is not entitled to any special significance.   *See* 20 C.F.R. §§ 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[5] is attached to treating physician opinions regarding the

---

[5]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section."   20 C.F.R. §

credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference.  *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).  "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.  Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'"  *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).  A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight.  *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

---

404.1527(d)(3).

-9-

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Plaintiff claimed a January 31, 2005, onset of disability. The ALJ carefully examined the medical records, including all Dr. Alt's treatment records. The ALJ noted that plaintiff "saw Dr. Nan Alt, psychiatrist, for medication management sessions in January, April, July and November 2004." (A.R. 464). Psychiatrist Alt offered a diagnosis of "alcohol dependence, cocaine abuse, bipolar disorder NOS with moderate symptoms." (A.R. 464; *see* A.R. 258-61). Plaintiff stopped working at the end of January in 2005. (A.R. 470). The ALJ noted that the reasons why plaintiff

quit her job were "various and unclear."[6] (A.R. 470). "After quitting her job, the claimant did a lot of lawn mowing and yard work, did a lot of house work, and cared for her grandchildren. She continued to smoke cigarettes despite physician advice, abused alcohol, and occasionally forgot to take her medication. (A.R. 471). "The claimant saw Dr. Alt for medication management sessions in April and July of 2005. Her diagnosis and Global Assessment of Functioning score and medications remained the same. In April 2005, the claimant stated that she was doing well and caring for her grandchildren. Dr. Alt reported that the claimant was psychiatrically stable." (A.R. 13; *see* A.R. 262-63).

"The claimant saw Dr. Alt for medication management on January 11, 2006, and stated that her husband died several weeks ago. Her diagnosis was alcohol dependence, cocaine abuse, and bipolar disorder NOS with moderate symptoms. The claimant's last cocaine use was listed as week of September 4, 2000, and the records indicate that she drank alcohol frequently and regularly. The claimant also saw Dr. Alt for medication management in April and August of 2006. In August 2006, the claimant stated that she was looking for a job and Dr. Alt reported that she was in stable condition." (A.R. 465; *see* A.R. 264-65).

On May 12, 2006, plaintiff appeared at the emergency room at St. Mary's Hospital with complaints of cough, congestion, and upper back pain that was worse with inspiration. Plaintiff

---

[6]"At the initial hearing, the claimant testified at first that she stopped working in 2005 because she became frustrated and confused. Then she testified that she stopped working in 2005 because her husband was still alive and she did not need to work, and also her arm and knees were hurting. When reminded of her foot surgery by the judge, the claimant testified that she stopped working in 2005 because she had surgery on her toes and could not walk. The claimant also testified that she stopped working in 2005 because of trouble with her supervisor. (A.R. 470).

continued to smoke cigarettes and consume alcohol.  Her EKG and chest x-ray were normal.  She was diagnosed with bronchitis, provided with a prescription for pain medication, and was instructed to stop smoking.  (A.R. 274).

On June 3, 2006, plaintiff appeared at the emergency room at St. Mary's Hospital. She reported that "last evening she was walking home from the bar and was accosted by two men who stole her purse."  The attending physician observed: "The patient admits to drinking alcohol last night and also today."  Plaintiff was treated for a left facial contusion and a left ninth posterior rib fracture.  (A.R. 211-12).

On September 1, 2006, Psychologist Wayne Kinzie conducted a consultative examination.  Plaintiff stated that she had been hospitalized at sometime in the distant past for bipolar disorder and that she was "currently seeing a psychiatrist for medications (Dr. Alt)."  (A.R. 284).  Plaintiff related that she had a problem with alcohol in the past and an alcohol-related DUI charge.  Plaintiff reported that she was living on her own, but talked with her daughter on a daily basis.  (A.R. 285).  Psychologist Kinzie accepted plaintiff's representations that she had last used crack cocaine in 2000, and that she had significantly reduced her alcohol intake.  Kinzie simply noted that in January 2004, plaintiff had been diagnosed with alcohol dependence, cocaine abuse, and bipolar disorder, NOS.  Kinzie offered a diagnosis of bipolar disorder, most recent episode depressed – moderate by history.  (A.R. 287).

On September 11, 2006, William Schirado, a State agency psychologist, reviewed the available evidence and offered his opinions that plaintiff's mental impairments did not meet or equal the requirements of any listed impairment and that plaintiff retained the RFC for simple repetitive, routine tasks that did not involve working with the public.  (A.R. 289-305).

-12-

On December 9, 2006, Dr. Alt noted that plaintiff was alert and oriented in all three spheres.  Plaintiff reported that her daughter had recently delivered twins by C-section.  Plaintiff stated that she was upset that her claim for disability benefits had been denied.  Dr. Alt provided supportive therapy.  (A.R. 368).

On December 29, 2006, plaintiff complained of a "constant tickle" in her throat.  Her physician at Advantage Health advised smoking cessation.  (A.R. 325).  In early 2007, Timothy Lenters, M.D., performed "tennis elbow" release surgery and achieved excellent results.  (A.R. 354-58).

In January 2007, plaintiff related that she continued to battle with her husband's daughter over cash from the sale of his estate.  Plaintiff reported no side effects from her medication.  (A.R. 367).  On March 26, 2007, plaintiff and Dr. Alt discussed plaintiff's "dru[n]k driving violation."  (A.R. 366).

"The claimant did not see Dr. Alt between March 2007 and November 2008.[7]  (A.R. 15).  On November 17, 2008, plaintiff received an "intake" interview conducted by a social worker in Dr. Alt's Office.  It was noted that plaintiff "had again been abusing alcohol and had received a DUI" before "terminating treatment with [Dr. Alt's] office."  (A.R. 442).  The intake examiner gave

_____

[7]Plaintiff attempts to downplay this gap in treatment by arguing that Dr. Alt began treating her in 2000, and that there is "no indication that this lapse in treatment caused further limitations[.]" (Plf. Brief at 6) (citing A.R. 447).  The significance of the lapse in treatment is that it supports an inference that plaintiff's mental impairment was not so severe that it required frequent treatment. Further, a bare conclusion that there was a treatment relationship years earlier does not suffice.  A claimant cannot provide a summary statement and then claim entitlement to a treating physician relationship at date earlier than one shown by the supporting documentation.  A contrary rule would deprive the ALJ of the opportunity to determine whether the level of restriction claimed in the summary is supported or undermined by the underlying treatment records.  *See Landsaw v. Secretary of Health & Human Servs.*, 803 F.2d 211, 213-14 (6th Cir. 1986); *Weeks v. Shalala*, No. 94-5948, 1995 WL 521156, at * 3 (6th Cir. Sept. 1, 1995).

-13-

the "presenting problems" summary: "history of alcohol abuse, significant anxiety, moderate depression, appetite disturbance, and lack of energy and motivation.  She is able to maintain appropriately in conversation, hygiene and grooming are good.  She reports that she does need the assistance of her daughter as she does not drive.  She does not feel that she is safe at driving stating that she gets very nervous and afraid."  (A.R. 442).

On October 22, 2008, plaintiff reported to her treating physician, Paul Elsen, M.D., that her exercise consisted of chasing her 4 grandchildren "every day."  (A.R. 432).  Plaintiff continued to smoke cigarettes against medical advice.  Dr. Elsen "strongly encouraged smoking cessation."  (A.R. 433).

On November 25, 2008, plaintiff testified at her administrative hearing.  (A.R. 26-46). Plaintiff testified that she lived by herself.  (A.R. 27).  She stated that she still had her driver's license and that she had been "DUI . . . within the past year."  (A.R. 35).  Plaintiff continued to drink alcohol.  (A.R. 35).  She stated that she drank "[s]ometimes on certain days depending if I'm nervous or I just need to relax."  (A.R. 35).  She testified that she did not believe that she had a current alcohol problem, but she had a problem with it in the past.  (A.R. 36).

On December 5, 2008, Dr. Alt completed a RFC questionnaire for plaintiff's attorney. (A.R. 445-47).  Plaintiff had no history of hospitalization for any mental impairment or extensive treatment.  Nonetheless, Dr. Alt offered her opinion that on December 5, 2008, plaintiff had marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and "marked" episodes of decompensation each of extended duration.  (A.R. 446-47).  She did not identify any supportive medical findings, clinical notes, or test results (A.R. 447), and none are to be found in this administrative record.  The majority of Dr. Alt's records

-14-

regarding plaintiff stem from "pharmacologic management" meetings. Dr. Alt also conducted a few psychotherapy sessions. (A.R. 366-72). After the January 11, 2006, session when plaintiff related that her husband had died suddenly several weeks earlier, Dr. Alt initiated a trial of Ativan. (A.R. 264). Dr. Alt also asserted that plaintiff had a marked limitation in demonstrating reliability and offered the following as a supportive finding: "A review of her ability to attend scheduled appointments reflects some lack of reliability." (A.R. 446). The records from Dr. Alt's office reveal that plaintiff attended virtually all of her scheduled appointments (A.R. 258-65, 366-72), and the only evidence of any missed appointment is an unsigned note suggesting that plaintiff was a "no show" for an appointment on Halloween 2006. (A.R. 369). The ALJ considered the Dr. Alt's RFC questionnaire responses at length, and he found that the administrative record did not support the level of restriction that she suggested:

> Dr. Alt reported on December 5, 2008 that the claimant had difficulties for a number of years with episodic periods of stability where she could work well; and in the past struggled with being able to understand complex instructions, particularly with matters that arose after her husband died. Dr. Alt reported that the claimant did not have any restriction in her activities of daily living, but had some periods when she did not use good judgment. When asked about the claimant's ability to perform work-related activities Dr. Alt reported that the claimant had extreme limitations in understanding and carrying out complex instructions, and marked limitations in her ability to deal with work stresses, understand and carry out detailed instructions, and demonstrate reliability. Dr. Alt reported that the claimant had moderate limitations in her ability to relate to co-workers, deal with the public, interact with supervisors, function independently, maintain attention and concentration, behave in an emotionally stable manner, and relate predictably in social situations. Dr. Alt reported that the claimant had mild limitations in her ability to carry out simple instructions; and no limitations in her ability to follow work rules, and maintain personal appearance. Dr. Alt concluded that the claimant had marked limitations in her social functioning, and concentration, persistence and pace along with marked episodes of decompensation 21F).

> The undersigned does not give great weight to this opinion of Dr. Alt because it refers to the claimant's alcohol abuse in disrupting her functioning while saying that the abuse is not now present. Dr. Alt did not make clear whether the low marks in functioning were due to her lapse in treatment or her abuse of substances. Also the undersigned notes that with her

-15-

recent return to treatment, the claimant may become more functional before a twelve month period ends.

* * *

Dr. Alt reported in April 2004 the claimant was doing well and did not have any major complaints. In April 2005, Dr. Alt reported that the claimant was psychiatrically stable. The claimant stated in August 2006 that she was looking or a job and Dr. Alt reported that she was in stable condition. An examination in August 2006 revealed average energy level, average speech, good ability to do serial 7s and simple calculations, organized thought processes, good memory, good fund of general information. Records dated October 2008 indicate that the claimant's coronary artery disease was stable. The claimant did not receive any mental health treatment between March 2007 and November 2008. The claimant . . . was capable, through December 30, 2008, of performing a wide range of light work with the additional limitations described above.

(A.R. 467-71). The extreme restrictions that Dr. Alt suggested were not well supported by the record as a whole and were inconsistent with her own treatment notes. The Sixth Circuit has repeatedly held that inconsistencies between proffered restrictions and the underlying treatment records are "good reasons" for discounting a treating source's opinions. *See, e.g., Hill v. Commissioner*, 560 F. App'x 547, 549-50 (6th Cir. 2014); *Fry v. Commissioner*, 476 F. App'x 73, 75-76 (6th Cir. 2012). I find no violation of the treating physician rule.

**3.**

Plaintiff argues that the Commissioner's decision should be overturned because his opinion failed to discuss non-examining Psychologist William Schirado's opinions. On September 11, 2006, Psychologist Schirado reviewed the records then available and found that plaintiff's impairments did not approach the level of severity necessary to satisfy the demanding standards of Parts B and C of listing 12.04. (A.R. 289-302). Schirado stated that the evidence did not "establish the presence of the 'C' criteria. (A.R. 300). Plaintiff did not satisfy any of the Part B severity

-16-

requirements.  To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following:  marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration.  A marked limitation means more than moderate but less than extreme.  Repeated episodes of decompensation, each of extended duration means three episodes within 1 year, or an average of once every four months, each lasting for at least 2 weeks.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B); *see Burbridge v. Commissioner*, 572 F. App'x 412, 414 (6th Cir. 2014); *see also Nichols v. Commissioner*, No. 14-5397, __ F. App'x __, 2014 WL 4783094, at * 2 (6th Cir. Sept. 26, 2014).  Psychologist Schirado offered his opinion that under Part B, plaintiff had only  "moderate" limitations in restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence and pace.  Plaintiff had no episodes of decompensation.  (A.R. 299). Plaintiff ignores this portion of Schirado's opinion because it would only serve to further reinforce the ALJ's factual finding that plaintiff did not meet or equal the requirement of any listed impairment.  (A.R. 468-69).  The ALJ found that, based on the broader record "through December 30, 2008." plaintiff did not satisfy any of the Part B requirements.[8]  Plaintiff offers no argument on appeal that the ALJ's finding that she did not meet or equal the requirements of any listed impairment is not supported by substantial evidence.

Instead, plaintiff's argument is directed to the "current evaluation" Mental Residual Functional Capacity Assessment form that Schirado completed on September 11, 2006.  (A.R. 303-

---

[8]The paragraph B criteria used at steps 2 and 3 of the sequential analysis "are not an RFC assessment."  *Policy Interpretation Ruling Titles II and XVI:  Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p (reprinted at 1996 WL 374184, at * 4 (SSA July 2, 1996)).

06).  Psychologist Schirado reviewed the records that were available to him on that date and offered his opinion that plaintiff was capable of performing simple repetitive, routine tasks that did not involve working with the public.  (A.R. 305).  Schirado supported this opinion by noting that the evidence showed "no evidence of limitation" or that plaintiff was "not significantly limited" in most areas of mental functioning.  There was "no evidence of limitation" in plaintiff's ability to remember locations and work-like procedures, ability to understand and remember very short and simple instructions, and the ability to remember and understand detailed instructions. (A.R. 303).  Schirado found that the evidence indicated that plaintiff was "not significantly limited" in the ability to carry out very short and simple instructions, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, the ability to sustain an ordinary routine without special supervision, the ability to make simple work-related decisions, the ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to ask simple questions or request assistance, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, the ability to maintain socially appropriate behavior and to adhere to socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, the ability to be aware of normal hazards and take appropriate precautions, and the ability to set realistic goals or make plans independently of others. (A.R. 303-04).  Schirado found that the evidence indicated that plaintiff was "moderately limited" in a few areas:  the ability to maintain attention and concentration for extended periods, the ability to work in coordination with or proximity to others without being distracted by them; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to respond

-18-

appropriately to changes in the work setting, and the ability to travel to unfamiliar places or use public transportation. (*Id.*). The only areas where Schirado thought that the evidence indicated a marked limitation was in plaintiff's ability to carry out detailed instructions and the ability to interact appropriately with the general public. (*Id.*). Plaintiff makes a vague argument that Schirado stated that she had "Marked and Moderate limitations in multiple areas of functioning." (Plf. Brief at 8). Plaintiff ignores Psychologist Schirado's conclusion that a person with marked and moderate limitations in the areas indicated would be capable of performing simple repetitive, routine tasks that did not involve working with the public. (A.R. 305). Plaintiff's brief contains no argument regarding how the limitations that Schirado suggested would undermine the substantial evidence supporting the ALJ's factual finding that through December 30, 2008, plaintiff retained the RFC for light work "except that she is limited to simple, repetitive, and routine tasks; she cannot be in contact with the general public; she is unable to perform fast paced jobs; she is unable to perform jobs with quota requirements." (A.R. 469).

Plaintiff argues that the Commissioner's decision must be overturned because the ALJ's opinion failed to mention Exhibit 7F, the RFC assessment discussed above. (Plf. Brief at 8). It is well established that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Commissioner*, 152 F. App'x 485, 489 (6th Cir. 2005); *see Boseley v. Commissioner*, 397 F. App'x 195, 199 (6th Cir. 2010). Here, the ALJ considered "all the evidence of record." (A.R. 462).

The only authority that plaintiff cites is 20 C.F.R. §§ 404.1527(f)(i) and (ii). (Plf. Brief at 8). No such regulation exists. Plaintiff may have intended a citation to 20 C.F.R. §§ 404.1527(e)(2)(i) and (ii), because in 2012, subsection (f) was redesignated as subsection (e). *See*

-19-

*Hunt v. Astrue*, No. 4:12-cv-244, 2013 WL 2392880, at * 7 n.8 (N.D. Tex. June 3, 2013).

Subsection (e)(2)(i) makes pellucid that the ALJ is not bound by any findings made by State agency

psychological consultants: "Administrative law judges are responsible for reviewing the evidence

and making findings of fact and conclusions of law. . . . (i) Administrative law judges are not bound

by any findings made by State agency medical or psychological consultants[.]" 20 C.F.R. §

404.1527(e)(i). The ALJ must "consider" such opinions, but the ultimate determination of whether

the claimant is disabled is reserved to the Commissioner. (*Id.*). Subsection (e)(2)(ii) states that an

ALJ should consider findings made by a State agency psychological consultant under the "relevant

factors in paragraphs (a) through (d) of this subsection. Subsection (d) is the relevant subsection for

consideration of a "Mental Residual Functional Capacity Assessment" because a claimant's RFC

is not a medical opinion, but an administrative finding of fact reserved to the Commissioner.[9] *See*

20 C.F.R. § 404.1527(d)(2), (3); *Edwards v. Commissioner*, 97 F. App'x 567, 569 (6th Cir. 2004);

*see also Lamb v. Commissioner*, No. 5:13-cv-2232, 2014 WL 4354419, at * 7 (N.D. Ohio Sept. 4,

2014) ("A claimant's RFC is not a medical opinion, but an administrative determination reserved

to the Commissioner."); *Hammer v. Commissioner*, No. 13-10176, 2014 WL 1328190, at * 1 (E.D.

Mich. Mar. 31, 2014). Section (d)(3) states: "We will not give any special significance to the source

of an opinion on issues reserved to the Commissioner[.]" 20 C.F.R. § 404.1527(d)(3). "Opinions

from non-examining physicians are not entitled to any special degree of deference." *Hellenbrand

v. Commissioner*, No. 4:13-cv-2135, 2014 WL 3349518, at * 16 (N.D. Ohio July 8, 2014). If there

---

[9]RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. §
404.1545(a)(1); *Brannon v. Commissioner*, 539 F. App'x 675, 677 (6th Cir. 2013); *Griffeth v.
Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007).

was a deficiency in the ALJ's analysis, it was harmless.[10]  *See Johnson v. Commissioner*, No. 13-11715, 2014 WL 3123527, at * 8 (E.D. Mich. July 8, 2014).  A discussion of Schriado's opinion that plaintiff was capable of performing simple repetitive, routine tasks that did not involve working with the public (A.R. 305) would have simply reinforced the ALJ's well-supported finding regarding plaintiff's RFC.  (A.R. 469).  I find no basis for disturbing the Commissioner's decision.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:  October 9, 2014                    /s/  Phillip J. Green
                                           United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).

---

[10]The Supreme Court has cautioned appellate courts against becoming "impregnable citadels of technicality."  *Shinseki v. Sanders*, 556 U.S. 396, 407.  "No principle of administrative law or common sense requires [this court] to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result."  *Kornecky v. Commissioner*, 167 F. App'x 496, 507 (6th Cir. 2006) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)).